this is 23-7-0-2-4. Welcome back Mr. Southerlook. May it please the court. My focus in this argument is really just going to be on one issue, the second proposition of error, that it was plain error for Eugene Wheat, who was the government's expert, to interject his argument about how the fire started. And to kind of set this up. Isn't this a classic example of asking one too many questions? Yes. I mean hindsight's 20-20 and that's true. But one point that I would. There's no objection made. There's no motion to strike. No argument that this is plain error. I think trial counsel is presented with a problem in a situation like this. You know, whether to move on, whether to call attention to it. And this counsel made a choice, but I'm not making an argument that it's not plain error. One thing that I would like to bring up, and that's the concept of an evidentiary harpoon. Even though that's not something that's been talked about at length in this court, it was referenced in other books, albeit in a footnote, where it found such testimony as sufficiently prejudicial may form the basis for reversible error. And other states. So he answered the question. The question was asked of the witness and he answered it. The question shouldn't have been asked. He got a good answer on the preceding question. Yes, it's possible. I disagree. It's a self-inflicted harpoon. I disagree. I think that the question was a question that could have been answered yes or no. I think we had an expert witness that was frustrated by the extensive cross-examination. We have an expert witness who was placed on notice that his opinion wasn't going to be admitted. And that's why I wanted to talk a little bit about the evidentiary harpoon because that's something where fault is taken into account. It's something that's willfully jabbed into evidence by an experienced police officer that's not responsive to the question that's being asked. He answered more, like I said, it was a yes or no question. I think it should have been answered that way. But I agree. I agree that this is plain error. And I intend to argue that it's plain error. We don't have to. Let me ask you, would it have been obvious to the district court that this was a non-responsive answer? In order to follow up on Judge Kelly's question, it's one thing. Did this corroborate the defendant's version? That's a possible question. Prior to the question, Mr. Wheat had already said that he had never seen a lit cigarette ignite gas. He didn't believe it could happen. And so, you know, putting aside the point that I think you were discussing with Judge Kelly of whether it was one too many questions, he knew that we didn't believe that. And so then the question is, well, it kind of corroborated, you know, the boom at the next trailer home, the mother-sister. That kind of, it could have kind of corroborated, you know, this lit cigarette theory, right? Well, doesn't that assume that this is within the realm of reason? It's sort of like saying, well, it kind of corroborates the theory that the world is flat. Well, nothing can corroborate that because that's ridiculous. And Wheat had already said that's ridiculous. Your expert actually said that he had never seen a cigarette, you know, ignite gas. And so when he, and then he follows up and says, well, I had never seen gas start, you know. And so on plane, on prong two of plane error, and I realize there's not a lot of briefing on prong two, what about the, would it be wrong for us to say that it wasn't obvious to the district court that this was a non-responsive answer such that the district court should have interjected and said, Mr. Wheat, that is not responsive. Doesn't this claim fail at prong two? I mean, I don't believe that this was invited error. I think invited error would have been a direct question. What is your opinion? I mean, you can't come back later and. That's why I'm asking about prong two instead of invited error. I think since Eugene Wheat, the prosecutor actually asked the question, asked the improper question relating to his opinion, and Mr. Wheat was on notice that this was something that the prosecutor was getting at that wasn't able to get in. I think that the judge was maybe put on a little bit more notice because of how that was set up. And it was only a few minutes before. It was during the end of the prosecutor's direct examination and fairly soon, I think, into the defense examination. So I think under these facts, yes, I think it satisfies the plain error. Obviously, what I spent more time on was arguing about the substantial rights point because I think it's easy to say, well, there was sufficient evidence in this case to support the conviction. And certainly the evidence was sufficient that Mr. Hernandez started this fire. The question was the degree of culpability involved in him starting the fire. But he started the fire. What about the Griffith factors on prong three of plain error? Don't we apply the Griffith factors, the strength of the evidence? Well, the strength of the evidence is pretty compelling. The mother and grandmother both said, yeah, he poured gasoline on us and lit us on fire. He says to the EMT, well, I got mad and I shouldn't have done it. Those are pretty compelling arguments. I don't dispute that. And that's why I think I have to walk a bit of a tightrope here because I don't think we're looking at error that would have resulted in a not guilty verdict. I do think that this was error that could have resulted in a conviction for a lesser offense, particularly involuntary manslaughter. We have a jury that under these facts, I think if the jury were to have accepted everything that the government had presented, would have found Mr. Hernandez guilty of first-degree murder. They did not. They did not find premeditation. And I think that when you think of the malice and the premeditation going in together, the jury very well could have found that this was not an intentional act. They could have relied on- Well, yeah, but involuntary manslaughter- Judge Kelly, you were going to ask something. Judge Kelly? Well, I was going to say that how could they ever find it was not intentional when the two witnesses who died specifically said he put gasoline on us and lit it. I mean, come on, you've got to take the facts as they came out. Well, and indeed, I think that based on that, one would have thought that the jury would have convicted of first-degree murder, but they didn't. And I think that's because second-degree murder has this broader language that malice can be interpreted as acting with callous and wanton disregard for human life. And based on that broad definition, I've had juries come back with notes between involuntary manslaughter and second-degree murder. Because when you talk about second-degree murder and you refer to acting with callous and wanton disregard for human life, you also have the gross negligence necessary for involuntary manslaughter. And that amounts to reckless and wanton disregard for human life. Those are very close. Non-extreme reckless and wanton disregard. It is a matter of degrees. And that's something that this Court has written in opinions that it's a matter of degrees. But like I said, we've gotten jury notes back that it's not very clear on the gross negligence. How does gross negligence compare to wanton disregard for human life? It's fairly close. So my argument, as I say, is a thin line. I'm not suggesting that based on this evidence that the jury would have found Mr. Hernandez not guilty. But I think very well that there's a reasonable probability that the error affected the outcome. This one question, your argument is that this one question with this qualification, that gasoline doesn't start, that, well, I didn't believe his account, which is, I think as you intimated, was, all that was was a reiteration of what he had just said earlier in a different way. I've never seen, I've done this 30 years, I've never seen a lit cigarette like gasoline, not gasoline. And so then he says basically the same thing. Yeah, I didn't believe that his lit cigarette lit the gasoline. And then he says, well, why? Well, because I've never seen gasoline start. So that one little snippet, you're saying, satisfied your burden at prong three to show that this undermines confidence in the jury because they would have found non-extreme reckless and wanton disregard. How, how, how would that snippet match on to a theory that this was non-extreme reckless and wanton disregard? Your Honor, the... In other words, I think, how would we ever write this case to reverse? I don't think that would be a better way of asking that. Judge, expert witnesses can certainly approach that. It can be obvious that that's the expert's opinion because he's stating all of these reasons why that's opinion. And I think that, as you pointed out, that was one of the reasons. I think the problem is, to my way of thinking, is there are a lot of other reasons why Mr. Wheat came to this conclusion. Eugene Wheat relied on a number of things that the jury didn't know about to come to that. In fact, I think he probably decided that Mr. Hernandez had committed this offense almost right away when he found out, looking at Mr. Hernandez's record, that he had a prior arson arrest. And it might have even been a conviction. I don't remember what he was convicted for. But anyway, there was certainly a police report that outlined the fact that he'd been involved in arson before. That factor entered into the expert's opinion. With all the evidence that's one way and the attention we've been paying to this, it's my fault. Was harmless error ever argued in this case? I just don't remember. Your Honor, I just don't remember if that particular language was used. I think the, I don't think so. I don't think so because I don't think I responded to it in my reply brief. No. And I probably would have. Thank you. I just, I don't remember that. He'd also talked to the medical examiner. The medical examiner had given him his opinion that it was more than likely that someone poured gasoline on at least one of these women, Frances Wright. Based on talking to witnesses, he had determined that there were two origins of the fire, which also entered into his opinion that this could not have been an accident. I just think that the. Yeah, but he never was able to testify to that. But he wasn't, right. So these things entered into his opinion that it wasn't an accident, but it was based on things that the jury didn't hear about. So I think he went beyond the evidence by making that statement. And while he didn't exactly use the term accident by stating that he didn't believe him, I think given the fact that that was the defense, the obvious, the only defense in the case was that this was not an intentional act. I think the jury interpreted that as he had an opinion that Mr. Hernandez was lying. I have nothing further, unless the court does. Judge Kelly, do you? No, thank you. Can you stop this clock? Because I don't want him to be punished. Because I had a question. And I just really, Mr. Weiss testified to several things, and I just want to make sure that I understand which of those opinions that you are disputing. Where the fire originated, are you disputing the admissibility of that? And if so, because I didn't really understand why that would even have helped, why that would have even hurt you. Oh, not an issue, I don't think. I mean, the reason why I mentioned the two points was that was something that the district court excluded from evidence. Not the two ignition. The point of origin right outside the breezeway, he's saying that that's where the fire probably originated. Yes. And I think that was admitted, right? I think so. And so, but you're not disputing that? No. And then, it's difficult to light a gasoline with a cigarette. I mean, your expert said that. So, are you disputing the admissibility of that opinion? The entire answer. The fact that he said, I didn't believe. I mean, that's the key with, had he not said, I didn't believe. On the, yeah, on the Hill issue, you are. Yes. But not on the, I'm talking about the Daubert issue. You're talking about his witness. Well, I'm saying, you know, you've raised the Daubert issue saying, Mr. Weiss, you know, testified to these three things, but you've never really identified which of those opinions that you really are caring about that you think should constitute an error. And so, one of those opinions was when Mr. Weiss said, it's difficult to light gasoline with a cigarette, and your whole argument about it violating an FBA standard 921. Are you, I'm just trying to figure out, are you disputing the admissibility of that one opinion that Weiss testified that it's difficult to light gasoline with a cigarette? I do recall, and the objection was sustained as to the actual test. I am not objecting to his statement that he had never seen it happen, because that was certainly within his personal experience. I don't know if I'm helping. Well, it is helpful. And so, the only other opinion that I saw that we was able to testify about was that the likely cause was ignition of an accelerant. And you had argued that, the wheelchair and these other potential accelerants, are you disputing the admissibility of Weiss under Daubert, that one opinion that the likely cause was ignition of an accelerant? No, I think the scientific testing supported that. So, is it fair to say that of the opinions that under the Daubert issue that we testified about, you really don't have any dispute about any of the admissibility about any of those particular opinions? I don't have anything additional to offer, no, Your Honor. All right. Thank you. We'll hear from Billy. May it please the Court. I'm Jared Lehman. I represent the United States. Cutting to the heart of Defendant's Proposition 2, the plain error standard on the arson investigator's opinion testimony, if you will, about the defendant's credibility. This case, I think, turns on the plain error standard. And candidly, I won't hide the ball from the Court. I think it's error for a expert to testify that way. I think it would affect the fairness of a judicial proceeding. Whether it's plain, it's a different conversation. But the third prong of whether it affected a substantial right is, I think, where the defendant loses in this case. So you concede prongs 1 and 2? Yes. No, Your Honor. Well, let me say it this way. I concede it's error, Your Honor. And I concede that it affects a fairness of a judicial proceeding. Okay. Whether it's plain- You got me confused. Run that by me again, what you're conceding. Yes, Your Honor. I concede that it's error for the arson investigator to have testified he didn't believe the defendant's statement. I concede that it would, in all likelihood, affect the fairness of a judicial proceeding. Going back to Griffin, I think this Court held very similarly in Griffin. Well, let me make sure, Father, because that was his own counsel's question to them, not the government's question to him. So you're saying that when, I'm like where Judge Kelly, the question that should never have been asked by opposing counsel, are you conceding that that's error on your part? What I'm conceding, Your Honor, is the witness shouldn't have said what he said. Now, I think invited error takes it away from the plain error analysis. But going through just the plain error analysis, he shouldn't have said what he said on it was error and affected the fairness of the trial. Okay. Now, I don't agree that it was plain, and I don't agree that it affected a substantial right. And I'm going to tell you later that invited error removes it entirely from the plain error analysis. So, Your Honor, I don't, and if I'm confusing you, I apologize. Let me see if I can get there. I just want to know, are you giving up your case? That's what I hear you're conceding. No, no, Your Honor. That's certainly not what I'm trying to do. I'm trying to go back to Griffin. And this court in Griffin, its analysis turned on prong three of the plain error analysis. And that's what I'm trying to say is we are similar to Griffin in this case. The defendant cannot pass the effect of the substantial rights portion of the plain error analysis. That's what I'm trying to say. I'm not going to argue that what the arson investigator said was appropriate. I'm not going to argue that it didn't affect the fairness of the trial. And I will tell you that invited error will remove all that anyway, because the defendant is the one that brought this into issue. The defendant brought this issue into the trial. The defendant is the one that brought this issue before the jury. So getting into the effect of the substantial right portion, going through those analysis factors, just like this court did in Griffin, strength of the party's case, everyone, including the defendant, agrees he started the fire. There's no dispute that the defendant started the fire. It's just a matter of whether it was an accident or whether it was an intentional act. The two dying declarations that we have for the victims that died in the fire, both indicated that it was an intentional act. The defendant, one statement, I was mad, I shouldn't have done it, can be read very simply, I done it, is clearly an admission of an intentional act. His other statement is a false exculpatory statement, candidly. I was cleaning with gasoline, I had a cigarette, and then there was an explosion. So the defendant's statements can't even exist in the same plane. So the strength of the case is overwhelming in this case. Did it affect the defendant's theory of the case? I don't know that it did. The defendant couldn't even support his own theory of the case with his contradictory statements. Additionally, as we briefed to the court. Well, you know, the question I have is, without the defendant testifying,  well, it's kind of a fascinating situation. So had the United States not called Gene Weed at all, that false exculpatory statement would have never made it into the record. The only statements that would have made it into the record were the dying declarations of the two victims and then the defendant's statement to the EMTs, I was mad and I shouldn't have done it. The false exculpatory statement, absent Gene Weed, wouldn't have come into the record. I understand all that, but I'm not trying to be mean, but I'm still not sure that that answers my question. Because one of the Griffith factors that you're pointing out is the effect on the defendant's theory of the case. And so for us to meaningfully apply that Griffith factor, I have to know, well, what was the defendant's theory of the case? You're the one making that argument on the second Griffith factor. So what do you think, in applying the argument you just made, was the defendant's theory of the case? I'll admit it was an accident. The defendant's theory of the case is it was an accident on fire. However, what effect did the arson investigator, Mr. Weed's statement have on the defendant's case? And I would argue it has a very minimal effect on the defendant's case, given the defendant's own contradictory statements about his theory of the case. So anything that Gene Weed, the arson investigator, may have testified to couldn't have negatively impacted the defendant's theory of the case, because he negatively impacted his own theory of the case with his intrusive statements. Are you saying there was no prejudice? The third prong of plain error, and this, you know, on the facts that we've heard in posing counsel's argument, where is the prejudice? Your Honor, I don't see where this did affect a substantial right. And going through the factors in Griffin, there was no prejudice to the defendant, based on this statement. It simply existed in the same space as the defendant's already prior inconsistent statement about the fire. So there's absolutely no prejudice to the defendant in this case. But you told us that early on, in the first minute or two, that you're conceding that the answer that Mr. Weed gave to defense counsel undermined the fairness of the process. We have Griffith, but we also have a number of published cases that say prong three is designed to determine whether or not the obvious error undermined confidence in the outcome. You didn't concede those words, undermine confidence in the outcome, but I'm having trouble understanding, well, what is the difference between our language and our precedential opinions undermining confidence in the outcome with your concession that this answer did undermine the fairness of the process? Well, back to Judge Baldock's question, you have, I think, a very persuasive argument about the Griffith factors, but I wonder if you're in your first two minutes, you basically, in effect, conceded satisfaction of what we have described as the overarching standard for the third prong of plain error. No, Your Honor. I don't think that this comment changed the outcome of the trial. This case, as the court was discussing earlier with the appellant, was never going to be about involuntary manslaughter. Given the strength of the government's case, involuntary manslaughter was never going to be there. An acquittal was never going to be there. So did it change the course of the case? Not even talking about an acquittal, but did it change some sort of lesser concluded theory the defendant may have had? Absolutely not. So the confidence in the conviction itself wasn't implicated by anything that Mr. Wheat testified to. Lastly, Your Honor, I would like to discuss invited error in this case, and I believe it's set out in the brief. But Your Honor, I read the invited error doctrine to remove any error from the plain error analysis. And in this case, the defendant clearly invited this testimony into the record. And if you look at the direct examination of Investigator Wheat, the defendant, the defense counsel, objected to a very similar question that the attorney for the United States asked in this case. So if we look at whether this was an intended invited error, an intentional waiver, if you will, the defendant clearly objected to a very similar question to this during Gene Wheat's direct examination. So the defendant's clearly bringing this in, clearly inviting this error. He's doing it intentionally. So Your Honor, I would submit to the court that that invited error just removes this altogether from any sort of plain error. And to the extent that plain error analysis remains, Your Honor, I think the United States prevails on the third prong of that plain error analysis in that it did not affect a substantial right of the defendant. Thank you. Thank you, Your Honor. Does Paul have any questions? Judge Kelley, did you have any questions? No, I didn't. Very briefly, my position is it's not invited error. And this is because the definition of invited error as quoted from United Court 30F third 1294 at page 1302 is invited error is nothing more, nothing less than the legal recognition of the common sense notion that a defendant can't complain when he gets what he asked for. The invited error doctrine precludes a party from arguing that the district court erred in adopting a proposition that the party has urged the district court to adopt. That's not what we have here. I think there was a recent case, and I don't remember the name of it off the asked for. That's the degree, I think, that invited error applies to. And that doesn't apply in this case. The government mentioned, and I don't know if this matters to the court, regarding the defendant's statement and how he wouldn't even have that to go on had his exculpatory statement not been admitted, the hearsay not been admitted. Had that not gotten in, I think, probably in order to pursue the defense that it was an accident in this case, I think the defendant would have had to testify. I think because that evidence got in, he didn't have to testify. Undermining fairness versus confidence in the outcome. I think this probably, to my way of thinking, and that's why I talked about the harpoon, is it comes down to whether this answer is responsive or not. And it was not responsive. Thank you. Judge Kelly? Very responsive. Okay. Thank you. This matter is submitted, and the remaining two cases will be taken up based on the briefs. Thank you, both counsel, for your advocacy. Court is adjourned, subject to recall.